Thank you. Thank you, Your Honor. Good morning, Your Honors. This is Lawrence Hilda's appearing for Plaintiff Appellant Jason Schmidt. This is a very simple case. Mr. Schmidt was arrested under precisely the circumstances that this court struck down the parade ordinance that was then applicable to the City of Seattle. I've got a fact question before we get to the law. Yes, Your Honor. There was a request for admissions and one of them was that when the police first contacted Schmidt, he was more than a block behind the other marchers and no other marchers were in his immediate vicinity or within 200 feet of him. Now, it looks to me as though there was no timely answer to the requests for admissions, no response. If that's so, then we take it as fact that Schmidt was, as your adversary put it in a brief, lollygagging all by himself out there in the street. On the other hand, if we take the facts to be what Schmidt said in his declaration, then you may have an issue of fact about whether he was alone in the street. And I'm not really sure what the record is on what fact we should take as the basis for decision. Understood, Your Honor. That was a clerical oversight on my part. We had been out of town. I would note, Your Honor, that in addition to Mr. Schmidt's declaration stating where he was, there are declarations from two of the march organizers who also give his location as being less than a block from the end of the march and with other marchers in the area. Is the request for admissions unanswered? It was answered, but it was answered late, Your Honor. Was there a motion for leave to file the late answer and a granting of the motion? There was no granting of the motion, Your Honor. There was a motion, but the judge denied it? That is my recollection, Your Honor, yes. So the admission stands. The admission then stands. There are contrary declarations, but that is true. I don't know as a matter of law if that makes a difference, but that is true, Your Honor. And that was my mistake, not the appellant's. Which declarations are there? You mentioned the two organizers that commented on his location. Yes, Ms. Cutter and Ms. Rainey. They are attached to exhibit, I believe it's G. It is G. Okay, I'll look at Ms. Cutter first. And can you tell me where or show me where it is that speaks of his location? I stand corrected that Ms. Cutter does not. Ms. Rainey, however, I'm going to double check that. I don't see anything there that speaks to that subject. I stand corrected. Is there anything that speaks to the question of what direction he was walking in? His declaration does. What does he tell us? At paragraph 6, I was clearly and obviously part of the march. Paragraph 8, I was at the tail end of the march as we approached Westlake Plaza, where a rally and some speakers were planned. Paragraph 9, I was less than one block away from the plaza and the bulk of the march in front of me. There was a very explicit description, such that I had to get on map to figure out what they were talking about, but as to what side of the street and on what street and so forth, and the position of the city is that he was, in fact, not headed in the same direction that the march had previously been headed. Does he speak at any point more specifically about where he was located at the time? I believe that he thought he was by saying he was continuing the march and talking about the march approaching Westlake. In addition, in the declarations of Ms. Cutter and Ms. Rainey, they state that their understanding of the agreement with the city was that a lane would be left open on 4th and the block immediately south of Westlake. I couldn't find it. Could you tell me how in the excerpts to find that provision in the permit? I don't know that it is in the permit. I think that's correct. Permit, by the way, has no ending time. The parade permit does not specify an ending time. I don't know that it is in the permit. The way the process works is there are a great deal of discussions that go on between the organizers and the special events coordinator for the city, and a lot of understandings are reached during those discussions. And the organizers operate based on those understandings, and they testify it as to them. Well, do we know, in fact, if there were too many people to fit in the plaza? Because the story told by the city suggests that but for his, what they describe as lolligagging in the street, they're ready to open the whole road, and they couldn't do that because he staked a claim to the street. Do we know if there were other people that were required in maintaining an open lane of traffic, or was, in fact, a lane of traffic maintained open afterwards after he was arrested? Was there anybody else there? Ms. Rainey says so at paragraph 17. Size and nature of the crowds and puppets and similar objects made it difficult for the entire crowd to get into the plaza at the time of Jason Schmidt's arrest. And 16, she says, we negotiated an agreement that if there were too many people to fit into Westlake Plaza, then the police would maintain an open lane of traffic in 4th Avenue. Was an open lane of traffic maintained after his arrest? That I do not know. No one else was arrested. My understanding was there were still other people in the street. Oh, here we go. As to Ms. Cutter, on the latter half of paragraph 9, the part that starts immediately on page 3 of her declaration, as the marchers returned to the park, I observed that a bottleneck had formed at the south end of Westlake Park near Pike. Some people had dropped a large backbone puppet that is probably 3 or 4 feet high and many yards long, which obstructed foot traffic into the north end of the park near the stage. And then she goes on to describe the bottleneck. Well, ma'am, I don't want to price this too thin, but that doesn't say anything about what people there might have been still in the street. I mean, if in fact the street was immediately opened after Mr. Schmidt was removed, that suggests that maybe Mr. Schmidt was by himself and there wasn't other need to close the street. There's no evidence that it was immediately opened, Your Honor. And he also states that in his declaration that there were other marchers in his immediate vicinity in paragraph 10. Thank you. Mr. Hildes, I want to go back to Judge Kleinfeld's question. There was a motion presented to the district court because there was a failure to respond to the request for admissions. And as I read footnote 1 of the court's order, it did not reach that question. As I read it, it says the court declines to address whether the matters in question should be deemed admitted for purposes of the pending motion. The court ordered that you submit something by November 21st. Did you submit something by that date? I did, Your Honor. And did the court rule on the motion that it be deemed admitted? The court, my recollection is that what the court did was to throw out the rest of the case as not, once they had dismissed on the officers, the ruling of the court was that there was no longer a basis for the case, and I don't believe the court ever addressed that particular point at that point. If they did, then we were denied. Let's say, just for the sake of argument, that we treat the matters as not admitted. How did it interfere with this fellow's right to express his opinion, to be told to walk on the sidewalk? Well, what interfered was his being arrested. This court held and identified a number of cases in the decision on Seattle Affiliate v. City of Seattle that the sidewalk is not an equivalent forum to the street, and cites Hague v. CIO and Krishna Consciousness and a number of those cases. You need the street if you have a really big parade, but there are just a few stragglers. I don't understand why. Well, if you arrest the people who are at the end of a march, one of two things happens. People refuse to march or they panic. You don't have to arrest them if they get on the sidewalk. But all he did was ask why, and they arrested him for asking why, and there's a line of cases from McKinney and Houston v. Hill that says that that's not a basis for arrest. Right now, I'm not asking about the law. I'm asking about the fact. How does it interfere with your expressing yourself to do it on a sidewalk? Because it's not an equivalent forum and he's not visible. It's not equivalent if there are a lot of you. If you've got 4,000 people in a march, you can't fit on the sidewalk. You have to get a permit to use the street. And they had a permit. Even if it interferes with driving. But once you just have a few of you, I don't understand factually how you're impeded in sending your message from the sidewalk. If that is the case, then people who are at the back of the march because they're disabled or infirm or tired or walk slower are then not given the same constitutional rights as people who are at the front of the march and walk faster. If you can say, okay, that's enough, you people who are left. I have a friend who marches as a walker. There are those of us who have participated in various public expressions and done it on sidewalks. But if you have a permit, these people went to the trouble of getting a permit under an ordinance that's now been thrown out, acted with the permit. He thought he was acting in accordance with the permit. I have a friend who has a walker who walks and marches. He's always at the back. If he faces abandoning the march on the sidewalk or getting arrested because he's slow, then it means that only the fast can march in the street. And I don't think that's what the First Amendment intended. And the fact, he was, the traffic was blocked several blocks away. He was not interfering with traffic, which is potentially an interference. Until the street had been cleared of the marchers. So the fact they blocked the traffic doesn't say that they wanted to keep blocking the traffic indefinitely because one person decided to sit there. But he wasn't sitting. He was moving. My point is the fact that it's several blocks away is really not an answer. They're prepared to open the street. But it took longer to arrest him and people came out to see what was going on. Traffic was not opened immediately. There's no evidence that traffic was opened any time in the next half hour. If they had just let him finish the march or said you've got to move a little faster, just finish the march, it would have been, traffic would have been opened sooner than arresting him and making a public spectacle in the street. We've gone through our time, so unless my colleagues have additional questions. Thank you, Counsel. Thank you. Counsel. Good morning, Your Honors. First I'd like to point out SER, page 73 of the SERs. There's an entry at 248. That is the CAD sheet, which is the event history for the arrest and for the event itself. It sets forth the timeline and that information is conveyed over radio. And you will see that at 248, which was approximately right after the time the arrest was affected, the streets were opened to traffic as soon as the police cars could disappear, which indicates not that there were lots of people in the street, but that the police indeed, or that there is indeed evidence that these streets were opened almost immediately after the individual was arrested. I don't understand that. I think one of the questions was whether there was any evidence that the streets were opened after the plaintiff had been arrested. And the CAD sheet is evidence that's been submitted. It's part of the record that the court considered. It shows that the individual was arrested, or at least contacted, I'm sorry, at 245. It shows that at 248, which I believe the entry would be 1448, but not being in the military, I forget to say that. 1448 is where it says streets were opened. Oh, you're dealing with the argument that it took longer to arrest him than it would have taken to let him walk a block? No, I'm addressing the issue of whether there was evidence that after he was removed from the street that the streets were immediately opened. I don't understand. Well, there's no question that the streets were blocked, is there? No, there's no question that the streets were blocked. If they're blocked, there's traffic behind the block. Yes, absolutely. I'm sorry, maybe I misunderstood. I thought the court asked if there was any evidence that the streets had been opened immediately after he had been removed from the street. I thought counsel said they could have been opened. That's a fair response to the question I posed. Okay, thank you, Your Honor. I've got something else I want to ask you about. Yes, Your Honor. That footnote 1 by the judge refers to an order to show cause. He wrote an order on an even-if basis, even if I don't deem the request for admission to have resulted in admissions nevertheless. Yes, Your Honor. Summary judgment is granted against the plaintiff. Was there a subsequent order that eliminated the even-if and established the admission? No, Your Honor. What happened is there was an order to show cause that was issued. The counsel was supposed to present evidence in a footnote that is in the second order, the order denying reconsideration. The court, I think it's the first or second footnote the court, I'm sorry, it's on ER 25 note 2. The court notes that the plaintiff was required to respond why they didn't timely respond. He provided a lot of excuses why he couldn't respond in September and October, but that the responses were due. I'm not sure you're getting addressing what I'm concerned about, so let me telegraph it for you. Sure. What I'm concerned about is, is there a genuine issue of fact or not about whether Schmidt was lollygagging all by himself in the middle of the street, as your brief suggests and as the police evidence suggests, or whether he was just at the tail end of a march that had a parade permit, as his declaration suggests. The request for admission, if the admission were established, would end the discussion. There would be no genuine issue of fact, but it looks as though it may not because of the way the judge addressed it. So I want to know, why isn't there a genuine issue of fact about whether he was lollygagging in the street all by himself or whether he was at the tail end of the march? Sure, and I'll address that. I have two points for that. One is under Rule 36, if you don't admit on a timely basis, they're conclusively established as admissions. You don't need a court order to say that. What you do need is a court order saying that those admissions are withdrawn. Counsel, you don't need a court order to establish that. However, when the judge decides the case without regard to the admission, it means that he did not treat the matter as admitted and decide the case on that basis. Okay. And to respond to the other half of, or I guess what I'm trying to say is to provide the other half of my response, what I would ask the court to look at is what has been in dispute. The only thing in dispute is whether at some point in time, at some unspecified location, there were people, other marchers in Mr. Schmidt's immediate vicinity. What Mr. Schmidt has not stated was that those individuals were not headed towards Westlake Park as opposed to standing or proceeding in the same direction he was. Well, let me read to you from his declaration, which the court below didn't rely upon. I was at the tail end of the march as we approached Westlake Plaza where a rally and some speakers were playing. I was less than one block away from the plaza and the bulk of the march in front of me. There were other marchers also in this tail end, also on the street, in my immediate vicinity. As the march approached the plaza, the pace slowed. Yes, Your Honor. And let me, if you recall, in the court's order, it only relied on Officer Zucker and Officer Lowe's declaration in making its findings. Well, to go to what creates a genuine issue of fact, I would suggest that facts that are in dispute, whose resolution do not affect the outcome of the motion, are not genuine issues of material fact. What Plaintiff has stated is that somewhere on the street in his vicinity there were other individuals. What he hasn't stated is that the march was continuing, that people were still proceeding in a march fashion as opposed to heading into Westlake Park. It says that in paragraph 10. It says just that. It says that the march was continuing. There were other marchers. He identifies the other people in his vicinity as part of the march. Your Honor, there's no dispute that there were several, I believe as many as 200 people who had engaged in this march at one point. There were other marchers also in this tail end, also on the street, in my immediate vicinity. Yes, and what he hasn't stated is whether they were continuing in that fashion or if those individuals had headed towards Westlake Park. He didn't say if they were wearing green sweaters either, but what does it matter? Because whether they were heading towards Westlake Park would be a dispositive fact for the question of whether the march had ended or not. But if they were heading towards Westlake Park and they were done and going towards the park like everybody else had already done, then the fact that they were in his immediate vicinity does not indicate that the officers could not reasonably believe that the march had concluded. You get 100 people walking toward an intersection, some of them are going to get there before others. Absolutely, Your Honor, and the evidence is that the vast majority, if not all of the marchers, were in the park. Taking what the plaintiff has said, what we can also look at is the event history, and that is the event history I referred to earlier. It shows that the tail of the march had cleared the route one block away from Westlake at 235. It says that the parade had ended at 238. And plaintiff was contacted at 246, or possibly 245. So there is a good seven minutes that he was in the street where there's no evidence that anyone else was not either heading in the park or was pursuing. Why is his declaration, if it's considered, not evidence? Do we have to preclude consideration of his declaration, and do we have to accept the admissions as having in fact been admitted in order to sustain your position? The parade permit had no definitive end. It did not specify that the individuals had to march in the street as opposed to the sidewalk. There is no dispute that he was not under arrest. He was asked to leave. He could have proceeded on the sidewalk, as the court has already acknowledged. Something of a tangent. I mean, that answer appears to presume he's by himself. His position has been, I'm not by myself. I might have been at the end of the line, but somebody's got to be at the end of the line. He says there are other marchers in my immediate vicinity. And the use of the term marchers, although perhaps not precise, is reasonably understood to mean, well, we're part of the march. We're heading in that general direction. We may be going around something and so forth. But unless you have a deposition or something more precise where we can conclude that he acknowledges he wasn't facing the park, I'm not sure how we can take the city's position except by adjudicating facts, which is not what we're supposed to do. Your Honor, the evidence, once my client submitted the evidence, it was plaintiff's burden to support or to submit admissible evidence to establish a genuine issue of material fact. Isn't the declaration admissible evidence? I guess my concern is... And we have to conclude his submission in the light most favorable to you, don't we? Yes, of course you do. But the question then falls to the point of, in this particular context, the officers or the court has ruled that the officers were qualifiably immune. And the question is whether that specific contention, that there were other marchers in his vicinity, would preclude an officer from believing that the march had been concluded when it had been broadcasted over the radio that it had, when the majority, if not all, were either in the park or headed to the park. So the fact that these individuals may still have been in the street does not mean that the officers had no reasonable basis to believe that the parade had been concluded, and therefore there was no permit that was authorized in the presence of those individuals. I'm curious about the reference to qualified immunity. There's no question that people have a right, particularly with a parade permit, to protest under the First Amendment. Is that true? I'm sorry, I might have missed part of your question. But if you said that they have a right... Well, since at least 1848, the Supreme Court has said that people have a right under the First Amendment to parade and protest. Yes, if there is a parade permit in effect. Yeah, and there was. Well, the parade permit was no longer in effect because the parade had ended. Well, that's if you... Go ahead. It's a self-fulfilling prophecy. I mean, you're saying we think the parade has ended so the permit doesn't count. And the position of plaintiff is the parade hadn't ended. I was just at the tail end of it. But the question with respect to qualified immunity is what the officers could reasonably believe. I'm sorry, Your Honor, it appears that I'm overtiming. May I continue? If we take his declaration as true, which sounds like we probably have to, that he's less than a block from the plaza, the bulk of the march is in front of him, there are other marchers with him in his immediate vicinity at the tail end, if we take that to be factually true, then how do we reach the conclusion that there's no genuine issue of fact but that a reasonable officer could conclude that the parade was all over? Okay. I'm thinking I put myself in the shoes of a reasonable officer, albeit he can be mistaken. That's okay. He doesn't lose his qualified immunity for being mistaken. But I'm a reasonable officer. There's been this march of people, and I don't know if they have bullhorns or keffiyehs or what they have, a big event on 4th Avenue, the main street. And there are some people in the march, and this fellow, he's obviously part of the march because he was dressed in solidarity with the people of the Middle East by wearing a keffiyeh, he says, not your standard Seattle outfit. And he's at the tail end, and he's less than a block away, and there are other marchers also in the tail end on the street in his immediate vicinity. If a reasonable officer sees that, how can he conclude that it's all over? Okay. There are a couple of things that I'd like to address with that. One is that assuming that these other marchers were with him in the West Lane, they were three to four lanes of traffic away on the opposite side of the street. People can participate in marches and still decide not to continue on and proceed into the rally. So just because they have decided to stay in the street and not join the rally doesn't necessarily mean that they are continuing to exercise their rights under the parade permit. They can't join the rally until they get there. Your Honor, and I'd encourage you, I have a map, and I don't know if you'd like to see it, but West Lake Plaza takes up the entrance is on Pike and the exit, so to speak, is on Pine. So it takes up the entire block. He was arrested at Pike and Pine in that area, and the testimony is that he was right there. That's what the declaration is basically saying, that he was at the tail end of the march. The tail end of the march had cleared several minutes before, I think almost ten minutes before he was contacted one block away. So, you know, taking the facts as they stand. He says he was in the tail end of the march with other people. Yes, and I understand that, but my point was, is the tail end of the march had cleared a block, one block away, ten minutes before he was contacted. Well, according to the schedule you've given us, the log, but if he says something different, I mean, I don't think the log is concrete truth. The court hasn't determined that that's right, and so that we have to discount counter statements. In fact, if he wants to say the police log is full of hooey. I was there. I was part of the march. I don't know what time it was, but I was here. I don't know on what basis we're supposed to be able to accept the police log. And so you did say something with regard to the side of the street that may be of interest. He says nothing about his specific location, although the references in the officer's declarations are quite specific. So it may be fair for us to infer his location was, as the officers described. What's the significance of that? The question was whether an officer could mistakenly believe that the parade had been concluded. And I guess what I'm trying to say is the officers are to reach their decisions based on objective manifestations and the facts and circumstances known to them at the time, and they can have, as Judge Kleinfeld said, a mistaken belief. I'll leave the geography. The side of the street that he was on, is that the side opposite the plaza that they were aiming for? Yes, Your Honor. And if you'd like, I have Google Maps so I could show you. I tried to map this out. I pulled out the tourist map, which I'm handed at the hotel, and to figure it out. And my impression was just this, but I want to make sure I'm right about that. Yes. The undisputed testimony is that he's on the west side of the street. The west side is the water side, which is an entire major arterial street width away from Westlake Park. Thank you, Counsel. Thank you, Your Honor.
judges: Alarcon, Kleinfeld, Clifton